**COMMUNITY SERVICES PROJECT, INC., Appellant/Cross–Appellee,**

v.

**BAWAC CLEANING SERVICES, INC.; Commonwealth of Kentucky, Finance and Administration Cabinet; and Commonwealth of Kentucky, Transportation Cabinet, Appellees/Cross–Appellants,**

and

**BAWAC Cleaning Services, Inc., Appellant/Cross–Appellee,**

v.

**Community Services Project, Inc.; Commonwealth of Kentucky, Finance and Administration Cabinet; and Commonwealth of Kentucky, Transportation Cabinet, Appellees/Cross–Appellants.**

Nos. 2005–CA–002320–MR, 2005–CA–002545–MR.

Court of Appeals of Kentucky.

May 25, 2007.

Douglas A. U'Sellis, Louisville, KY, for appellant/cross appellee Community Services Project, Inc.

Robert C. Ziegler, Olivia A. Ballard, Covington, KY, for appellee/cross appellant BAWAC Cleaning Services, Inc.

Patrick W. McGee, Hiren B. Desai, Frankfort, KY, for appellee/cross appellee Finance and Administration Cabinet.

Before STUMBO and VANMETER, Judges; PAISLEY,[1] Senior Judge.

## OPINION

**VANMETER, Judge.**

KRS 45A.470 expresses a policy that in procuring commodities and services, governmental bodies are to give preference to certain agencies serving disabled persons. The Boone Circuit Court held that the Commonwealth of Kentucky, Finance and Administration Cabinet (Cabinet), in applying the requirements of the statute, failed to conduct negotiations with the qualified nonprofit agencies bidding on a contract for janitorial and maintenance services. It ordered the Cabinet to resolicit bids for the contract. We hold that such negotiations were not required under the facts presented, and we therefore reverse.

In July 2004, the Cabinet issued a solicitation to bid for a contract to perform facilities and grounds maintenance as well as janitorial operations at the northbound and southbound rest areas along I–75 in

---

1. Senior Judge Lewis G. Paisley, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Boone County. The solicitation included a preference for organizations providing services to persons with disabilities, similar to that expressed in KRS 45A.470(1).[2] Within the following month, the Cabinet received four bids. Two bids were from "for-profit" companies, AMA Services and Walter A. Smith. Two bids were from qualified, nonprofit organizations that employ individuals with disabilities: Community Services Project, Inc. (CSP), and BAWAC Cleaning Services, Inc. (BAWAC), which had provided the services for some eleven years preceding. AMA Services submitted the lowest bid, $769,106.10, and was assigned 97.5 "best value points" based on its contract bid price, months in business, and number of similarly-sized contracts. CSP submitted the next-lowest bid, $849,000.95, and was assigned 88.53 best value points. Walter A. Smith bid $1,021,270, and was assigned 77.78 best value points. BAWAC submitted the highest bid, $1,192,000, and was correspondingly assigned the lowest number of best value points, 63.32.

Based on the preference for awarding contracts to organizations which provide services to persons with disabilities, the Cabinet awarded the contract to CSP. BAWAC filed a timely protest with the Cabinet, based on the failure of the Cabinet to "conduct negotiations with the parties to determine which shall be awarded the contract" as required by KRS 45A.470(5). The Cabinet denied the protest and BAWAC filed a declaration of rights action in the Boone Circuit Court.

The Cabinet and CSP contested venue, and argued that the Cabinet had properly awarded the contract. The trial court denied motions to dismiss based on lack of venue and, on the merits, granted BAWAC's motion for summary judgment that the Cabinet had improperly awarded the contract. In doing so, the trial court agreed with the Cabinet and CSP that generally KRS 45A.470 does not apply to competitive bidding, as authorized by KRS 45A.080. However, it ruled that once the Cabinet invoked the dictates of KRS 45A.470(1) to award the contract to an agency providing services to persons with disabilities, it was then required to follow the requirements of the entire statute, including the negotiation requirements of KRS 45A.470(5), before awarding the contract. The trial court ordered the Cabinet to "reissue its bids," which we understand to mean that the Cabinet should restart the process of soliciting bids for the contract. This appeal and cross-appeal followed.

The Cabinet and CSP argue that the trial court erred in ruling that the Cabinet failed to conduct negotiations as required by statute. The Cabinet additionally argues that venue was improper. BAWAC cross-appeals the trial court's ruling that KRS 45A.470 does not apply to competitive bids.

■ The first issue for resolution is that of venue. The parties agree that venue is determined by KRS 452.405, which states in part that "actions shall be brought in the county where the cause of action, or some part thereof, arose ... [a]gainst a public officer for an act done by him in virtue or under color of his office, or for a neglect of official duty." The Cabinet argues that all its actions in soliciting, evaluating and awarding the contract occurred in Franklin County, and that venue therefore is situated in that county.

2. The actual terms of the solicitation are not included in the record. However, the Cabinet has steadfastly maintained, and no other party has disputed, that the solicitation stated a preference for awarding the contract to an organization providing services to persons with disabilities, as stated in KRS 45A.470(1).

If we were deciding this as a matter of first impression, we might be inclined to agree with the Cabinet. However, in *Fischer v. State Bd. of Elections,* 847 S.W.2d 718, 721 (Ky.1993), *abrogated on other grounds, Hoskins v. Maricle,* 150 S.W.3d 1 (Ky.2004), the Kentucky Supreme Court held that a challenge to the constitutionality of a statute could be brought in the county in which the plaintiff resided, since that was the county in which the plaintiff was harmed. The court noted that those actions of state government which occur in Franklin County "may not affect or 'injure' any person. Appreciable harm arises only when the [action] directly affects the individual by denying him a right or imposing upon him an obligation." 847 S.W.2d at 721. In this case, while the Cabinet took actions in Franklin County, any harm to BAWAC, i.e., the alleged failure of the Cabinet to follow statutory requirements, occurred at BAWAC's principal place of business in Boone County. Thus, Boone County was a proper venue for the action.

As to the merits of this appeal, purchases of goods and services by state agencies are governed by the Kentucky Model Procurement Code, as set out in KRS Chapter 45A. A review of that chapter, however, reveals that it is divided into distinct subparts which were enacted at different times. For example, the main portion of the chapter, KRS 45A.005 to 45A.290, governs purchases made by the Finance and Administration Cabinet. Another portion, KRS 45A.343 to 45A.460, governs the parameters of a local public agency's ability to enact a local procurement act. Interspersed throughout the chapter are sections which promote other policies approved by the General Assembly. For example, KRS 45A.500 to 45A.540 sets forth a preference for using products containing recycled materials. The sections implicated in the Cabinet's solicitations for bids here, KRS 45A.465 and 45A.470, state a preference for using the products and services provided by the Division of Prison Industries of the Department of Corrections, by the Kentucky Industries for the Blind, and by qualified nonprofit organizations serving persons with severe disabilities. The question raised by this appeal concerns the interaction of KRS 45A.470 with the primary body of the Model Procurement Code, KRS 45A.005 to 45A.290.

As in any case involving statutory construction, "[a]ll words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning." KRS 446.080(4). Furthermore, the courts have a duty to construe statutes such that, if possible, the statutes will not conflict, they can be read together without contradiction or absurdity, and each can be given effect. *Head v. Commonwealth,* 165 Ky. 603, 177 S.W. 731, 734 (1915).

The basic premise of procurement is that the Cabinet is directed to award contracts by competitive sealed bidding. KRS 45A.080. Exceptions exist for small purchases, KRS 45A.100; for competitive negotiation when competitive sealed bidding is not practicable or the sealed bids exceed available funds, KRS 45A.085 and 45A.090; or for noncompetitive negotiation under the conditions set forth in KRS 45A.095.

In this case, the Cabinet determined to proceed with competitive sealed bids. Under this method, following the solicitation, receipt and opening of bids, "[t]he contract shall be awarded by written notice to the responsive and responsible bidder whose bid offers the best value." KRS

45A.080(5). The applicable definition describes "best value" as

a procurement in which the decision is based on the primary objective of meeting the specific business requirements and best interests of the Commonwealth. These decisions shall be based on objective and quantifiable criteria that shall include price and that have been communicated to the offerors as set forth in the invitation for bids.

KRS 45A.070(3). In this case, the solicitation directed that best value points would be awarded based on price, months in business, and number of similarly-sized contracts. The solicitation also stated that the Cabinet would give preference to organizations which provide services to persons with disabilities.

Against this framework stand the provisions of KRS 45A.470 [3]:

(1) All governmental bodies and political subdivisions of this state shall, when purchasing commodities or services, give first preference to the products made by the Department of Corrections, Division of Prison Industries, as required by KRS 197.210. Second preference shall be given to the Kentucky industries for the blind as described in KRS 163.450 to 163.470 through June 30, 2000, and thereafter to any products produced by Kentucky Industries for the Blind, Incorporated or any other nonprofit corporation with which the Department for the Blind contracts under KRS 163.480(2) to further the purposes of KRS Chapter 163 and agencies of individuals with severe disabilities as described in KRS 45A.465.

(2) The Finance and Administration Cabinet shall make a list of commodities and services provided by these agencies and organizations available to all governmental bodies and political subdivisions. The list shall identify in detail the commodity or service the agency or organization may supply and the price.

(3) The Finance and Administration Cabinet shall annually determine the current price range for the commodities and services offered from its experience in purchasing these commodities or services on the open market. The prices quoted by these agencies or organizations shall not exceed the current price range.

(4) The Department for the Blind within the Cabinet for Workforce Development and qualified agencies for individuals with severe disabilities shall annually cause to be made available to the Finance and Administration Cabinet, lists of the products or services available.

(5) If two (2) or more of the agencies or qualified nonprofit organizations wish to supply identical commodities or services, the Finance and Administration Cabinet shall conduct negotiations with the parties to determine which shall be awarded the contract. The decision of the Finance and Administration Cabinet shall be based upon quality of the commodity or service and the ability of the respective agencies to supply the commodity or service within the requested delivery time.

A preference for purchasing commodities and services produced or supplied by disadvantaged individuals is clearly expressed for all governmental agencies by subsection (1), and the term "services" is

---

**3.** The quoted version of this statute was applicable at the time of the 2004 bid solicitation. Subsequent amendments, effective April 21, 2006, merely amended the names of the Department for the Blind and the Cabinet for Workforce Development to the Office for the Blind and the Education Cabinet, respectively.

broadly defined by KRS 45A.465(4).[4] However, the remaining subsections speak to lists and prices of commodities and services offered and purchased, and current price ranges. Additionally, KRS 45A.470(3) specifies that "[t]he prices quoted by these agencies or organizations shall not exceed the current price range." Unfortunately, as has been noted previously, these statutory provisions were "not artfully or clearly drawn." Ky. OAG 84–134.

As a preliminary matter, we disagree with the trial court's conclusion that the Cabinet is unable to freely incorporate the preference expressed by KRS 45A.470(1) into the conditions of whatever bid solicitations it makes. KRS 45A.080(1) expresses as a requirement of a competitive sealed bidding solicitation that "specifications can be prepared that permit award on the basis of best value[.]" We ascertain no prohibition on the Cabinet seeking to comply with the preference expressed in KRS 45A.470(1), so long as it is able to do so within the context of preparing specifications which permit the award on the basis of best value.

■ Here, competitive sealed bidding was used in pursuit of a contract which was to be awarded on the basis of "best value." KRS 45A.080(5). Due to the language included in its subsections (2) through (5), KRS 45A.470 is not readily applicable to that process. Thus, a scenario in which the Cabinet would have the current, annual price range for janitorial and maintenance services at interstate rest stops is difficult, if not impossible, to imagine. Instead, KRS 45A.470 is most easily applied to the purchases of commodities and services which can be readily obtained "off the shelf," as evidenced by the list and price requirements which resemble inventory lists. However, subsections (2) through (4) give context to the requirement of KRS 45A.470(5) that negotiations must be conducted when two or more agencies or qualified nonprofits wish to supply **identical** commodities or services. These subsequent negotiations turn on a) the quality of the service or commodity, and b) the ability of the respective agencies to deliver timely. The absence of any reference to "price" in this subsection is clearly not accidental since subsection (3) requires the quoted prices to fall within the market price range. In other words, when KRS 45A.470 is read as a whole, it is clear that subsection (5) presumes that the services or commodities at issue will bear comparable prices. Thus, even if we accept BAWAC's argument that the KRS 45A.470(5) negotiation requirement applies to competitive sealed bids, the Cabinet correctly concluded that negotiations were not required in this case since BAWAC failed to offer a service at a price comparable to that offered by CSP.[5]

Under KRS 45A.280,

The decision of any official, board, agent, or other person appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a presumption of correctness and shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official, board, agent or other person do not support the decision.

---

4. KRS 45A.465(2) similarly broadly defines "products" for purposes of KRS 45A.470; however, the term "commodities," which appears most often in the latter statute, is not defined. In fact, the word "products" appears only in KRS 45A.470(4).

5. On basis of price, BAWAC's bid was 40% higher than CSP's bid ($1,192,000 ÷ $849,001 = 1.40). On the basis of best value points, CSP's bid was 42% higher than BAWAC's bid (88.53 ÷ 63.32 = 1.42).

In denying BAWAC's protest of the award of the contract, the Cabinet stated that it opened and assigned best value points to the four bids "[i]n accordance with the terms of the solicitation," and that it then conducted an evaluation to ascertain whether a bid by a nonprofit was entitled to preference. BAWAC argues not that the Cabinet's method for applying the preference for nonprofit organizations failed to comply with the terms of the solicitation, but only that the Cabinet failed to conduct negotiations. Since the decision of the Cabinet is entitled to a presumption of correctness and since, for the reasons stated above, the Cabinet was not required to conduct negotiations with the nonprofit organizations in this situa-

tion, it follows that the trial court erred in ruling that the Cabinet was required to reissue the bids.

The Order and Judgment of the Boone Circuit Court is reversed, and this matter is remanded to that court with the direction to reinstate the decision of the Cabinet to award the contract to CSP.

ALL CONCUR.